UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

JACOB A. RAGLIN,

                Plaintiff,

    v.                                    Case No. 25-cv-77-pp

STATE OF WISCONSIN, *et al.*,

                Defendants.

---

**ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO PROCEED WITHOUT PREPAYING FILING FEE (DKT. NO. 2), SCREENING COMPLAINT UNDER 28 U.S.C. §1915A AND DISMISSING CASE FOR FAILURE TO STATE A CLAIM**

---

Plaintiff Jacob A. Raglin, who is incarcerated at Oshkosh Correctional Institution and is representing himself, filed a complaint under 42 U.S.C. §1983, alleging that the defendants violated his constitutional rights. This decision resolves the plaintiff's motion for leave to proceed without prepaying the filing fee, dkt. no. 2, and screens his complaint, dkt. no. 1.

**I.    Motion for Leave to Proceed without Prepaying the Filing Fee (Dkt. No. 2)**

The Prison Litigation Reform Act (PLRA) applies to this case because the plaintiff was incarcerated when he filed his complaint. See 28 U.S.C. §1915(h). The PLRA lets the court allow an incarcerated plaintiff to proceed with without prepaying the civil case filing fee. 28 U.S.C. §1915(a)(2). When funds exist, the plaintiff must pay an initial partial filing fee. 28 U.S.C. §1915(b)(1). He then

must pay the balance of the $350 filing fee over time, through deductions from his prison trust account. Id.

On February 25, 2025, the court ordered the plaintiff to pay an initial partial filing fee of $9.80. Dkt. No. 11. The court received that fee on March 18, 2025. The court will grant the plaintiff's motion for leave to proceed without prepaying the filing fee and will require him to pay the remainder of the filing fee over time in the manner explained at the end of this order.

**II.      Screening the Complaint**

    A.      Federal Screening Standard

Under the PLRA, the court must screen complaints brought by incarcerated persons seeking relief from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court must dismiss a complaint if the incarcerated person raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

In determining whether the complaint states a claim, the court applies the same standard that it applies when considering whether to dismiss a case under Federal Rule of Civil Procedure 12(b)(6). See Cesal v. Moats, 851 F.3d 714, 720 (7th Cir. 2017) (citing Booker-El v. Superintendent, Ind. State Prison, 668 F.3d 896, 899 (7th Cir. 2012)). To state a claim, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain enough facts,

"accepted as true, to 'state a claim to relief that is plausible on its face.'"
Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v.
Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the
plaintiff pleads factual content that allows a court to draw the reasonable
inference that the defendant is liable for the misconduct alleged." Id. (citing
Twombly, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege
that someone deprived him of a right secured by the Constitution or the laws of
the United States, and that whoever deprived him of this right was acting
under the color of state law. D.S. v. E. Porter Cnty. Sch. Corp., 799 F.3d 793,
798 (7th Cir. 2015) (citing Buchanan–Moore v. County of Milwaukee, 570 F.3d
824, 827 (7th Cir. 2009)). The court construes liberally complaints filed by
plaintiffs who are representing themselves and holds such complaints to a less
stringent standard than pleadings drafted by lawyers. Cesal, 851 F.3d at 720
(citing Perez v. Fenoglio, 792 F.3d 768, 776 (7th Cir. 2015)).

B.     The Plaintiff's Allegations

The complaint names dozens of defendants. Dkt. No. 1 at 1. They include
the State of Wisconsin, Walworth County, Gail J. O'bel, Walworth County
Sheriff David Gerber, Diana Donahue, Lee D. Huempfner, Zeke Wiedenfeld,
Judge Robert J. Kennedy, Captain Shannah Illingworth, Walworth County
Human Services, Judge David M. Reddy, Judge Phillip A. Koss, Judge John R.
Race, Sergeant Josh Smith, Judge James L. Carlson, Judge Kristine E.
Drettwan, Judge Jason A. Rossell, Sergeant Michele Delapaz, Judge Gerad T.

3

Dougvillo, Judge Daniel S. Johnson, Judge Kelly Iselin, Sergeant Wayne Butke, Thomas F. Meyer and two John or Jane Does. <u>Id.</u>

The allegations in the complaint stem from an alleged sexual assault that the plaintiff says O'bel inflicted on him when he was fifteen years old and O'bel was eighteen years old. <u>Id.</u> He says the assaults began in October 2001 and continued for six months. <u>Id.</u> at 2. The plaintiff alleges that in 2001, after these assaults, an agent with Elkhorn Human Services sent the plaintiff to a juvenile home for boys. <u>Id.</u> O'bel later sent the plaintiff a letter notifying him that she was pregnant from the sexual intercourse that she forced on the plaintiff. <u>Id.</u>

The plaintiff alleges that in 2002, he spoke with an advocate from the Department of Health and Human services about the assaults. <u>Id.</u> at 3. He says that these visits "went now[h]ere." <u>Id.</u> The plaintiff alleges that defendant Huempfner worked for Family Services in 2002 and oversaw the Child Support Agency. <u>Id.</u> He says that later in 2002, Huempfner opened a paternity file regarding the plaintiff's daughter who was born to O'bel. <u>Id.</u> at 6.

The plaintiff alleges that on March 26, 2006, Judge Kennedy presided over a child-support matter involving the plaintiff, O'bel and the girl born to O'bel from the sexual assaults between her and the plaintiff. <u>Id.</u> at 3. He says that Donahue (whose name later changed to Rush) was the assistant district attorney assigned to the matter. <u>Id.</u> Thomas Meyer appeared as guardian *ad litem* for the plaintiff's daughter. <u>Id.</u> at 15. The plaintiff asserts that Judge Kennedy knew about the age difference between him and O'bel but "did nothing in his power to 'bring the matter to light.'" <u>Id.</u> at 6. He says that Meyer

violated the plaintiff's right to due process "for not reporting a crime which [labeled] [him] as a criminal instead of a victim of a sexual assault." Id. at 16. On June 27, 2008, the plaintiff attended a mediation regarding his daughter, and the judge ordered him to pay back child support and other expenses to O'bel. Id. at 4. The plaintiff says that on September 27, 2006, Judge Reddy held a mediation and custody placement hearing for his daughter. Id. at 6. He alleges that Judge Reddy did not take any action against O'bel "for the crimes against" the plaintiff. Id. at 6–7. The plaintiff says that after the hearing, he "was placed into custody" at the Walworth County Jail holding facility for failing to pay child support. Id. at 4. He says he again spoke with a child services advocate about the sexual assaults, but that "nothing was done by human services." Id.

The plaintiff alleges that on May 5, 2008, Judge Race held the plaintiff in contempt of court for non-payment of child support. Id. at 7. The plaintiff faults Judge Race for not doing "anything to help" him and instead "sweep[ing] matters under the rug." Id. On October 18, 2010, Judge Carlson also held the plaintiff in contempt of court for non-payment and ordered him to show cause. Id. The plaintiff says that Judge Carlson also failed to take any action regarding the alleged sexual assaults. Id. On January 11, 2011, Judge Drettwan held a post-judgment hearing. Id. The plaintiff does not say what this hearing involved or what the result was, but he also seeks to sue Judge Drettwan. Id. at 7–8.

On September 6, 2012, Judge Koss was assigned to the plaintiff's paternity matter. Id. at 8. The plaintiff alleges that Judge Koss also held him in

contempt of court for non-payment of child support, and he seeks to sue Judge Koss. Id. Similarly, the plaintiff alleges that on July 9, 2015, Judge Johnson was assigned to his paternity matter and modified his child support obligation. Id. at 8–9. The plaintiff sues Judge Johnson, who he says took no action against O'bel and "only punished" the plaintiff. Id. at 8–9. In January 2018, Judge Iselin took over the plaintiff's paternity matter, and Judge Dougvillo did the same in August 2019. Id. at 9. The plaintiff sues both of those judges for their alleged inaction and continued punishment of the plaintiff. Id.

In February 2023, the plaintiff was incarcerated at the Walworth County Jail. Id. at 5. He says that on February 16, 2023, he submitted requests "again addressing the sexual ass[a]ult issue" using "the Inmate tablet system." Id. at 5, 12. He says that he asserted that he was the victim and cited the applicable criminal statutes for O'bel's alleged sexual assaults. Id. at 12. He says that Captain Illingworth responded to these requests and told the plaintiff that "nothing will be done in this matter" because of the three-year age difference between him and O'bel and because it was an "old matter." Id. at 5. The plaintiff separately alleges that Sergeant Butke responded to the plaintiff's requests, told him that it had "nothing to do with the jail" and suggested that the plaintiff "look into it [him]self or get a lawyer." Id. at 12. The plaintiff asserts that Butke should have passed along his request "to a detective for further action." Id.

The plaintiff alleges that on February 17, 2023, he submitted another request about his sexual assault and asked to speak with a detective from the

Walworth County Sheriff's Department. Id. at 13. Sergeant Delapaz responded to the request but told the plaintiff that she would not "be sending anyone to talk to him as this is an old issue." Id. The plaintiff asserts that Illingworth "stopped the investigation between [him] and Ms. O'bel" instead of investigating it or asking a detective to do so. Id. He says that Delapaz did not provide a sufficient response and "failed to report a felony." Id. at 13–14.

The plaintiff alleges that on February 20, 2023, Sergeant Smith also responded to his request and told him that the jail would not forward his concern to police. Id. at 14. He says that Smith provided an additional response from Illingsworth, who said that the jail *did* investigate and report the plaintiff's concerns to the district attorney's office in 2021. Id. Illingsworth stated that the district attorney's office had determined that because the plaintiff and O'bel were within three years of age of each other and because the plaintiff had admitted "to willingly having sex with her at that time," the district attorney's office would not commence a prosecution. Id. She quoted from the district attorney's office 2021 report, in which the plaintiff stated, "She wants to come over, fucking with me, you know what I[']m saying. I mean of course I[']m a young man, I[']m gonna smash." Id. This quote also appears in the exhibits that the plaintiff attached to his complaint, though he does not cite these exhibits in his complaint. Dkt. No. 1-1 at 37–38.

On March 8, 2023, the plaintiff filed a John Doe criminal complaint about the sexual assaults. Dkt. No. 1 at 5, 9. He alleges that Judges Rossell, Reddy, Johnson, Daniels and Koss reviewed his motion and denied it. Id. at 9–

10. He accuses these judges of failing to help him and instead "making [him] the problem in the system and incarcerat[ing] [him] for non support." <u>Id.</u> at 10.

The plaintiff alleges that on an unknown date, he spoke with Jane Doe #1 about the alleged sexual assault by O'bel. <u>Id.</u> He says that Jane Doe is an employee of Walworth County Health and Human Services, and she "did nothing to help" him." <u>Id.</u> He alleges that the Health and Human Services office also "was aware of the situation between [him] and Ms. O'bel" and made him look like "a 'dead beat Dad' for non-support and aid." <u>Id.</u> at 10–11. He seeks to sue the Health and Human Services office and the "Walworth County Judicial System as a whole" for prosecuting him. <u>Id.</u> at 11.

The plaintiff alleges that on another unknown date, he again contacted Health and Human Services and spoke to Jane Doe #2 about O'bel. <u>Id.</u> He says that Doe #2 also "did nothing to aid or help" him and should be held liable for her inaction. <u>Id.</u> The plaintiff alleges that Sheriff Gerber supervises the jail and violated the plaintiff's rights when Gerber "did nothing in his power to aid or help" the plaintiff despite his complaints about O'bel. <u>Id.</u> at 16.

The plaintiff claims that he "suffers from many psyc[h]ological issues due to the interactions with Ms. O'bel," including depression, anxiety, post-traumatic stress disorder and personality disorders. <u>Id.</u> at 17. He says that he "has a hard time dealing with these issues" because of his repeated incarceration for failing to pay child support. <u>Id.</u> He asserts that "[a]ll defendants listed in this claim of civil rights complaint" violated his rights under the Fourth, Sixth, Eighth and Fourteenth Amendments. <u>Id.</u> at 15. The

8

plaintiff asks the court to "hold O'bel and the defendants involved" liable for violating his rights and for "being diliberatly [*sic*] indifferent and knowing that [he] would be damaged psyc[h]ologically from there [*sic*] actions." <u>Id.</u> at 18. He seeks $15,000 in compensatory damages against each defendant and $20 million in punitive damages. <u>Id.</u>

      C.    <u>Analysis</u>

The plaintiff has named dozens of defendants, including several state court judges, making allegations related to sexual assaults that he says took place over twenty years ago. He asserts that the defendants violated his constitutional rights by failing to pursue charges against Ms. O'bel and by incarcerating him for failing to pay child support to her. For several reasons, the plaintiff does not state a viable claim against any defendant, and he is not entitled to relief.

First, the majority of the plaintiff's allegations involve conduct that occurred years (or decades) ago. It is too late for the plaintiff to bring a claim based on this conduct. The relevant statute of limitations for lawsuits brought under §1983 is "the statute of limitations for personal injuries supplied by the state in which the claim arose." <u>Huber v. Anderson</u>, 909 F.3d 201, 207 (7th Cir. 2018) (citing <u>Wallace v. Kato</u>, 549 U.S. 384, 387 (2007)). The limitation period for §1983 cases arising in Wisconsin is the three-year limitation period prescribed by Wis. Stat. §893.54 (2018). Wisconsin previously allowed a six-year limitation period but in 2018 reduced that period to three years. <u>See</u> <u>id.</u>

(citing 2017 Wis. Act 235 (eff. Apr. 5, 2018)) (reducing applicable statute of limitations from six years to three years).

The previous six-year limitation period applies to the plaintiff's claims about events that he alleges occurred before April 5, 2018. That means the latest he could bring a complaint related to any events that occurred on or before April 4, 2018 is six years from that date—April 4, 2024. The plaintiff signed his complaint on January 15, 2025, and the court received it that same day. Dkt. No. 1 at 19. That means it is too late for him to bring a claim related to any events that occurred on or before April 4, 2018. The three-year limitation period applies to causes of action accruing on or after April 5, 2018. That means the plaintiff had to bring his complaint within three years of the date of any events that he alleges occurred on or after April 5, 2018. Because he did not bring his complaint until January 15, 2025, the only events that are timely are those that occurred within three years of that date—on or after January 15, 2022. The majority of the plaintiff's claims involve events that occurred before January 15, 2022. Any claims related to events that occurred before January 15, 2022 are untimely and subject to dismissal.

Even if the plaintiff's claims were not untimely, he has not stated a claim for relief. The plaintiff cannot seek relief under §1983 against the state court judges he names as defendants. Judges are absolutely immune from civil liability in the performance of their judicial functions. <u>Mireles v. Waco</u>, 502 U.S. 9, 9–10 (1991); <u>Stump v. Sparkman</u>, 435 U.S. 349, 363 (1978). That includes all actions "that are 'closely associated with the judicial process.'"

Smith v. Schwarz, 46 F. App'x 374, 375 (7th Cir. 2002) (quoting Cleavinger v. Saxn'r, 474 U.S. 193, 200 (1985)). The purpose of judicial immunity is to "protect[] judges from the fear of future litigation brought by disgruntled litigants unhappy with judicial decision-making." Agrawal v. Pallmeyer, 313 F. App'x 866, 867 (7th Cir. 2009) (citing Forrester v. White, 484 U.S. 219, 226–27 (1988)). The plaintiff alleges that several state court judges refused to take action against O'bel, ordered him delinquent in his child-support payments and dismissed his criminal complaint against O'bel. He cannot sue the judges for those decisions, even though he disagrees with them, because they fall within the judges' judicial functions.

To the extent the plaintiff seeks to use this lawsuit to challenge his state-ordered obligations to pay child support, federal court is not the proper forum. See Keith v. Wis. Dep't of Workforce Dev., Case No. 21-2398, 2022 WL 741731, at *2 (7th Cir. Mar. 11, 2022) (citing Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 284 (2005); and Mains v. Citibank, N.A., 852 F.3d 669, 675 (7th Cir. 2017)). It is not clear whether the plaintiff is seeking to invalidate the state-court rulings, but if he is, he would have to do so through an appeal in "a Wisconsin appellate court or the Supreme Court of the United States." Id. (citing Exxon Mobil Corp, 544 U.S. at 284).

The plaintiff also cannot sue defendant Donahue, who he says was the prosecutor assigned to his child-support matter in state court. Prosecutors are absolutely immune from suit for actions taken in initiating and pursuing criminal prosecutions because that conduct is "intimately associated with the

judicial phase of the criminal process." Imbler v. Pachtman, 424 U.S. 409, 430–31 (1976); Davis v. Zirkelbach, 149 F.3d 614, 617 (7th Cir. 1998). Charging decisions are the types of prosecutorial actions entitled to total immunity. Buckley v. Fitzsimmons, 509 U.S. 259, 269 (1993). That means the plaintiff cannot sue Donahue under §1983 for declining to prosecute O'bel and instead prosecuting the plaintiff for failing to pay child support, even though the plaintiff insists that he was the victim of sexual assault. See Tobey v. Chibucos, 890 F.3d 634, 650 (7th Cir. 2018).

The plaintiff faults Walworth County officials for not bringing charges against O'bel and for not prosecuting her for sexually assaulting him in 2001. But the plaintiff does not have a constitutional right to an investigation or prosecution of another person. See Wright v. Runyan, 774 F. App'x 311, 312 (7th Cir. 2019) (citing Linda R.S. v. Richard D., 410 U.S. 614, 619 (1973)). And the plaintiff concedes in his complaint that Walworth County Jail officials *did* report the plaintiff's allegations to the district attorney in 2021. He says that the district attorney's office investigated the matter and determined that it would not bring charges against O'bel because the plaintiff and O'bel were only three years apart in age and because of the plaintiff's admission that he consented to the sexual activity. That shows that the plaintiff has no claim against Illingworth and the sergeants whom he says failed to report his complaints about O'bel. The plaintiff's disagreement with the district attorney's decision not to prosecute O'bel also does not state a basis for relief under §1983. And this court has no authority to order the district attorney to reverse

its decision and charge or prosecute O'bel based on the plaintiff's allegations. See Benedict v. Eau Claire Area Sch. Dist., Case No. 08-CV-667, 2009 WL 440911, at *1 (W.D. Wis. Feb. 23, 2009) (quoting United States v. Batchelder, 442 U.S. 114, 124 (1979)) ("Whether to prosecute and what charge to file or bring before a grand jury are decisions that generally rest in the prosecutor's discretion.").

The plaintiff cannot proceed against O'bel on any claim under §1983 because she is not a state actor. A plaintiff may bring a lawsuit under §1983 only against persons acting "under color of state law"—generally state or local government officials or employees. See West v. Atkins, 487 U.S. 42, 49 (1988). The complaint states no basis to find that O'bel was acting under the color of state law when she allegedly sexually assaulted the plaintiff or attended court hearings involving child support. Her participation in the state legal system (like the plaintiff's) does not transform her into a state actor for purposes of a lawsuit under §1983.

The plaintiff also seeks to sue Meyer, who acted as guardian *ad litem* for the minor child during the state court proceedings. But guardians *ad litem* also are not state actors and cannot be sued under §1983. See Huiras v. Cafferty, Case No. 22-cv-575, 2022 WL 16835779, at *9 (E.D. Wis. Nov. 9, 2022) (citing Bach v. Milwaukee Cnty. Cir. Ct., 565 F. App'x 531, 532 (7th Cir. 2014) ("[T]he guardian *ad litem*, is not a state actor subject to § 1983."); and Nelson v. Kujawa, Case No. 07-C-741, 2008 WL 2401260, at *2 (E.D. Wis. June 11, 2008) ("[S]tate-appointed guardians ad litem are *not* state actors subject to

liability under 42 U.S.C. § 1983")), aff'd as modified, Case No. 22-3081, 2023 WL 4842323 (7th Cir. July 28, 2023). Even if Meyer could be considered a proper defendant, guardians *ad litem* "also are 'absolutely immune from liability for damages when they act at the court's discretion.'" Id. (quoting Cooney v. Rossiter, 583 F.3d 967, 970 (7th Cir. 2009)). For both these reasons, the plaintiff cannot sue Meyer for not reporting O'bel's alleged actions.

The plaintiff sues Walworth County Sheriff Gerber, but he alleges little against Gerber. He says that Gerber supervises the jail and did not take any action to help the plaintiff. These allegations do not suggest that Gerber personally was aware of the plaintiff's complaints and failed to take any action. He cannot be held liable for the actions of his subordinates merely because he is the sheriff. See Day v. Subsecretario del Sistema Penitenciario Federal, 838 F. App'x 192, 193 (7th Cir. 2021) ("Supervisors are responsible for what they do themselves, not for what their subordinates do."). And even if he could be held liable based solely on being the sheriff, the court already has explained why the plaintiff has not stated a claim against any Walworth County employee.

The complaint contains no allegations against defendant Wiedenfeld. It does not even explain who this person is or how he violated the plaintiff's rights. When a complaint fails to describe any action by a defendant, it necessarily fails to "state a claim for relief that is plausible on its face." Twombly, 550 U.S. at 570. The plaintiff has not stated a claim against Wiedenfeld and likely could not state a valid claim against him for the reasons the court has discussed.

The plaintiff seeks to sue the State of Wisconsin for all that he alleges has happened to him since 2001. But a state is not a "person" subject to suit for damages under §1983. Lapides v. Bd. of Regents of the Univ. Sys. of Ga., 535 U.S. 613, 617 (2002); Williams v. Wisconsin, 336 F.3d 576, 580 (7th Cir. 2003). Similarly, Walworth County Health and Human Services is not a "legal entity separable from the county government which it serves and is, therefore, not subject to suit." Whiting v. Marathon Cnty. Sheriff's Dep't, 382 F.3d 700, 704 (7th Cir. 2004). There are some circumstances in which a plaintiff may sue a *municipality* like Walworth County under §1983. See generally Monell v. New York City Dep't of Soc. Servs., 436 U.S. 658 (1978). But the plaintiff alleges no basis to hold the county—rather than its employees—liable for the conduct about which he complains. See id. at 691; Los Angeles County v. Humphries, 562 U.S. 29, 36 (2010). Even if he had, as the court has explained, the plaintiff has not alleged a valid claim against any Walworth County employee.

The court finds that the allegations in the plaintiff's complaint are untimely, improperly assert claims against individuals who are immune from suit and do not otherwise state a claim. Although district courts generally permit civil plaintiffs at least one opportunity to amend their pleadings, the court need not do so "when 'it is *certain*' that amendment would be futile." See Fields v. Miller, Case No. 21-1419, 2022 WL 1011666, at *3 (7th Cir. Apr. 5, 2022) (citing Runnion *ex rel.* Runnion v. Girl Scouts of Greater Chi. & Nw. Ind., 786 F.3d 510, 519–20 (7th Cir. 2015)). The plaintiff's complaint is thorough in its allegations of facts surrounding his claims. The court finds it certain that

any amendment would be futile. Although the court understands the plaintiff's frustration with the issues that he alleges occurred over the last twenty-plus years, his recourse for these actions is not a suit in federal court under §1983.

### III.    Conclusion

The court **GRANTS** the plaintiff's motion for leave to proceed without prepaying the filing fee. Dkt. No. 2.

The court **ORDERS** that this case is **DISMISSED** under 28 U.S.C. §§1915(e)(2)(B) and 1915A(b)(1) because the complaint fails to state a claim. The clerk will enter judgment accordingly.

The court will document that the plaintiff has incurred a "strike" under 28 U.S.C. §1915(g).

The court **ORDERS** that the agency that has custody of the plaintiff must collect from his institution trust account the **$340.20** balance of the filing fee by collecting monthly payments from the plaintiff's prison trust account in an amount equal to 20% of the preceding month's income credited to the plaintiff's trust account and forwarding payments to the clerk of court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. §1915(b)(2). The agency must clearly identify the payments by the case name and number. If the plaintiff transfers to another county, state or federal institution, the transferring institution must forward a copy of this order, along with the plaintiff's remaining balance, to the receiving institution.

The court will send a copy of this order to the Warden at Oshkosh Correctional Institution, where the plaintiff is confined, and email a copy to DLSFedOrdersEastCL@doj.state.wi.us.

This order and the judgment to follow are final. A dissatisfied party may appeal this court's decision to the Court of Appeals for the Seventh Circuit by filing in this court a notice of appeal within **thirty days** of the entry of judgment. See Federal Rules of Appellate Procedure 3, 4. This court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the thirty-day deadline. See Fed. R. App. P. 4(a)(5)(A). If the plaintiff appeals, he will be liable for the $605 appellate filing fee regardless of the outcome of the appeal. If the plaintiff seeks to proceed on appeal without prepaying the appellate filing fee, he must file a motion in *this court*. See Fed. R. App. P. 24(a)(1). The Court of Appeals may assess the plaintiff another "strike" if it concludes that his appeal has no merit. If the plaintiff accumulates three strikes, he will not be able to file a case in federal court (except a petition for *habeas corpus* relief) without prepaying the full filing fee unless he demonstrates that he is in imminent danger of serious physical injury. Id.

Under certain circumstances, a party may ask this court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Rule 59(e) must be filed within **twenty-eight days** of the entry of judgment. The court cannot extend this deadline. See Fed. R. Civ. P. 6(b)(2). Any motion

Case 2:25-cv-00077-PP    Filed 04/23/25    Page 17 of 18    Document 12

under Rule 60(b) must be filed within a reasonable time, generally no more than one year after the entry of the judgment. The court cannot extend this deadline. <u>See</u> Fed. R. Civ. P. 6(b)(2).

The court expects parties to closely review all applicable rules and determine, what, if any, further action is appropriate in a case.

Dated in Milwaukee, Wisconsin this 23rd day of April, 2025.

**BY THE COURT:**

**HON. PAMELA PEPPER**
**Chief United States District Judge**